UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 25-5191
(Civ. A. No. 24-0634)

AYMAN FAREH SOLIMAN,                                    Appellant,

v.

THREAT SCREENING CENTER,                               Appellee.

## APPELLEE'S MOTION FOR SUMMARY AFFIRMANCE

Appellee, the Threat Screening Center (the "Center"), respectfully moves for summary affirmance of the Memorandum Opinion (R.21) and Order (R.22) issued by the Honorable Loren L. AliKhan in this Freedom of Information Act ("FOIA") case, copies of which are enclosed herewith. The merits of the appeal are "so clear as to make summary affirmance proper," *Walker v. Washington*, 627 F.2d 541, 545 (D.C. Cir. 1980), and "no benefit will be gained from further briefing and argument of the issues presented," *Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 297–98 (D.C. Cir. 1987). Therefore, the district court's judgment should be summarily affirmed.

## BACKGROUND

In October of 2021, Appellant Ayman Fareh Soliman submitted a FOIA request to the Center, seeking records about himself. Compl. (R.1) ¶¶ 6-7. On the same date that Soliman submitted his FOIA request to the Center, he submitted another FOIA request to the Federal Bureau of Investigation (the "Bureau"), again seeking records about himself. Seidel Decl. (R.13-3) ¶ 6. Shortly after receipt of the aforesaid FOIA requests, the Bureau consolidated them into one request for processing. *Id.* After processing the consolidated FOIA request, the Bureau informed Soliman that it was not able to identify any responsive records. R.13-4 at 15. The Bureau also asserted a standard *Glomar* response, stating that it could neither confirm nor deny the existence of certain records relating to certain classes of information implicated by Soliman's consolidated FOIA request. *Id.* at 15, 52. Soliman administratively appealed the Bureau's response to his consolidated FOIA request, and the Bureau's response was ultimately affirmed. *Id.* at 24, 34-35.

In June of 2022, Soliman submitted a new FOIA request to the Center seeking additional records about himself. *Id.* at 41-42. In July of 2022, the Bureau responded to Soliman's FOIA request, indicating that

it was unable to identify any responsive records and reasserting its standard *Glomar* response. *Id.* at 45-48. The Bureau's response explained the process by which Soliman could submit an administrative appeal. *Id.* Despite these instructions, Soliman did not appeal the Bureau's July 2022 response. *See generally* R.1.

On March 5, 2024, Soliman filed suit in the District Court. *Id.* Soliman's Complaint did not challenge any of the Bureau's responses to his FOIA requests. *See generally id.* (reflecting that Soliman never challenged any withholding of purportedly responsive, non-exempt records by the Bureau). Instead, the Complaint alleged that the Center, despite being "a federal agency subject to [the] FOIA," improperly failed to provide a response to Soliman's multiple FOIA requests and withheld responsive, non-exempt records from him in a wrongful manner. *Id.* The Complaint is therefore fundamentally premised on Soliman's mistaken belief that the Center owed him responses to his FOIA requests separate from those provided by the Bureau. *Id.*

After the government answered Soliman's Complaint, the parties cross-moved for summary judgment. *See generally* R.13; *see also generally* R.16. At summary judgment, the parties' solely dispute hinged

on whether the Center is properly considered a part of the Bureau for the purposes of the FOIA. *Id.* According to Soliman, he was entitled to summary judgment because the Center abdicated its responsibilities under the FOIA when it failed to directly respond to his FOIA requests. *See generally* R.16. On the other hand, the govenrment contended that the Center, because it is a part of the Bureau, did not have any statutory obligation to issue responses to Soliman's FOIA requests separate from the Bureau's responses. *See generally* R.13.

On March 31, 2025, the District Court granted summary judgment in favor of the Center, finding that the Center is a component of the Bureau and that Soliman therefore failed to exhaust his administrative remedies. *See generally* R.23; *see also generally* R.24.

This appeal followed.

## ARGUMENT

The District Court thoroughly analyzed Soliman's arguments and applied well-settled legal principles regarding the Center's motion for summary judgment. For the reasons set forth below, this Court should summarily affirm the district court's disposition of each of Soliman's claims.

## I. The District Court Correctly Ruled that the Center is a Part of the Bureau.

The Court should summarily affirm the District Court's ruling that the Center is a part of the Bureau.

Importantly, this Court itself has explicitly recognized in multiple, recent cases that the Center is a part of the Bureau. *See*, *e.g.*, *Abdellatif v. Dep't of Homeland Sec.*, 109 F.4th 562, 564-65 (D.C. Cir. 2024) ("The [TSC is] a component of the FBI[.]"); *Ege v. Dep't of Homeland Sec.*, 784 F.3d 791, 793 (D.C. Cir. 2015) (explaining that the TSC is "administered" by the FBI); *Jibril v. Mayorkas*, 101 F.4th 857, 862 (D.C. Cir. 2024) (same). Because Soliman's FOIA requests necessarily sought records originating within the Center, which is a part of the Bureau, only the Bureau had an obligation to respond to his multiple FOIA requests. *See*, *e.g.*, *McGehee v. CIA*, 697 F.2d 1095, 1108 (D.C. Cir. 1983) ("the organs of government that first compiled the records" are "clearly are covered by the Act"); *see also* Mem. Op. (R.22) at 8 (observing that the Center is housed within the Bureau's National Security Branch) (citing https://perma.cc/34B3-PUTG).

Contrary to what Soliman has alleged in his Complaint and argued before the District Court during summary judgment briefing, the Center is a part of the Bureau and the Bureau's responses were sufficient to satisfy any obligations owed him under the FOIA. For these reasons, this Court should summarily affirm the District Court's decision.

## II. Soliman Failed to Exhaust His Administrative Remedies.

Further, summary affirmance of the District Court's finding that Soliman failed to exhaust his administrative remedies is appropriate.

Soliman's Complaint pled that he exhausted his administrative remedies prior to filing suit because the Center purportedly failed to respond to his FOIA requests. R.1 ¶¶ 21-22 (citing 5 U.S.C. § 552(a)(6)(C)(i)). Nevertheless, as the District Court correctly observed, Mem. Op. (R.21) at 9, regulations governing FOIA requests to subcomponents of the Department of Justice designate the Bureau and its Records Management Division as the entity to respond to FOIA requests to any part of the Bureau. As such, the Bureau properly responded to Soliman's FOIA request, and he had no right to a separate response from the Center.

As a result, to the extent that Soliman was dissatisfied with any of the responses he received from the Bureau to his FOIA requests referenced in his Complaint, he "[was] required to administratively appeal [such] 'determination[s]' before bringing suit." *Citizens for Resp. & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 182 (D.C. Cir. 2013)). A review of the undisputed record of this case, however, reveals that Soliman did not abide by pertinent exhaustion requirements prior to filing his action.

Specifically, it is undisputed that Soliman filed a timely appeal only of the Bureau's response to his consolidated FOIA request submitted in October of 2021, and that in July of 2022 the Department of Justice's Office of Information Policy affirmed the Bureau's aforesaid response. Seidel Decl. (R.13-3) ¶¶ 10, 12. But a review of Soliman's Complaint confirms that he never initiated this litigation to bring a challenge against the Bureau's response to his second FOIA request. *See generally* R.1 (confirming that Soliman's Complaint seeks only to challenge the Center's purported non-response to each of his FOIA requests rather than any response issued by the Bureau). And his Complaint confirms that he never administratively appealed the Bureau's response he

received to the second FOIA request submitted in June of 2022. *Id*. Given that the Center is a part of the Bureau, Soliman was required to administratively appeal the Bureau's response, if he believed that it was inadequate or that it should have been handled by the Center instead of by the Bureau. Because he did not, the District Court correctly ruled that Soliman failed to exhaust his remedies.

Accordingly, this Court should grant summary affirmance of the District Court's ruling granting the Bureau's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, Appellee respectfully request that this Court summarily affirm the judgment below.

JEANINE FERRIS PIRRO
United States Attorney


*/s/ Fithawi Berhane*
FITHAWI BERHANE
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-6653
Fithawi.Berhane@usdoj.gov

*Attorneys for the United States of America*

## CERTIFICATE OF COMPLIANCE

I hereby certify that foregoing complies with Federal Rule of Appellate Procedure 27(d)(2), in that it contains 1332 words, is in fourteen-point font and utilizes Century Schoolbook typeface.

*/s/ Fithawi Berhane*
Fithawi Berhane
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I certify that on this 10 day of July, 2025, the foregoing has been served on Appellant through the Court's CM/ECF system.

*/s/ Fithawi Berhane*
Fithawi Berhane
Assistant United States Attorney

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AYMAN FAREH SOLIMAN,

       *Plaintiff*,

       v.

THREAT SCREENING CENTER,

       *Defendant*.

Civil Action No. 24 - 634 (LLA)

## <u>MEMORANDUM OPINION</u>

This matter is before the court on a motion for summary judgment filed by Defendant, the Threat Screening Center ("TSC"), ECF No. 13,[1] and a cross-motion for summary judgment filed by Plaintiff Ayman Fareh Soliman, ECF No. 16. Mr. Soliman claims that the TSC violated the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, by failing to respond to his FOIA requests and unlawfully withholding responsive records, ECF No. 1 ¶¶ 29, 38. Upon consideration of the motions and supporting documentation, the court will grant the TSC's motion for summary judgment and deny Mr. Soliman's cross-motion for summary judgment.

### I.       FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following facts are undisputed. Mr. Soliman is an Egyptian asylee who lives in Cleveland, Ohio. ECF No. 1 ¶ 1. In October 2021, he submitted a FOIA request to the TSC, seeking the following records about himself:

---

[1] In March 2025, the "Terrorist Screening Center" was renamed the "Threat Screening Center." FBI, *The Terrorist Screening Center Changes Name to the Threat Screening Center*, FBI (Mar. 19, 2025), https://perma.cc/86XG-4CTU. The court has updated the caption accordingly.

Records of communications from or to foreign partners about Mr. Soliman, including, but not limited to, biographic, biometric, and derogatory information;

Records of encounters with Mr. Soliman received by or maintained by TSC;

Intelligence Information Reports containing information about Mr. Soliman and the accompanying summaries;

Records of queries by TSC to Fusion Centers about Mr. Soliman and the resulting information received;

EMA records including information about Mr. Soliman and the accompanying terrorism information;

Daily Summary Reports containing information about Mr. Soliman;

Subject Matter Expert (SME) reports and guidance containing information on Mr. Soliman;

Records of remote queries of the TDSB for Mr. Soliman; [and]

Records of requests to remove Mr. Soliman from the TDSB received by or maintained by TSC.

ECF No. 1-5, at 1, *see* ECF No. 1 ¶¶ 6-7; ECF No. 13-4, at 2.[2]  Mr. Soliman simultaneously filed

a FOIA request with the FBI's Record/Information Dissemination Section ("RIDS"), seeking

additional records about himself:

Records of name-based transaction queries by law enforcement personnel made to the FBI's National Crime Information Center about Mr. Soliman including but not limited to: Records sent to the FBI by law enforcement personnel about encounters resulting from such queries;

Records of queries made to the Integrated Automatic Fingerprint Identification System, by both foreign and domestic actors about Mr. Soliman and Records maintained or received by the FBI about encounters based on such queries;

Records of background checks submitted to the National Instant Criminal Background Check System about Mr. Soliman and

---

[2] The page numbers cited are those generated by CM/ECF.

Records maintained or received by the FBI about encounters resulting from such queries;

Records of encounters and information collected about Mr. Soliman by FBI Field Divisions and Case agents, JTTFs, Airport Liaison Agents and Attaches, Legal Attaches, U.S. Embassies, state and local law enforcement, ICE, and CBP;

Requests made by TSOU to the FBI about Mr. Soliman; [and]

Terrorist watchlist nominations for Mr. Soliman sent to NCTC from any DOJ component including the accompanying derogatory information.

ECF 13-4, at 8-9. Upon receipt, the FBI combined the TSC and RIDS requests into one request for processing. ECF No. 13-3 ¶ 6. In November, the FBI notified Mr. Soliman that the "request ha[d] been received at FBI Headquarters for processing," and that the FBI had assigned it a case number (No. 1508332). ECF No. 13-4, at 12. The FBI also explained that "[f]uture correspondence about [his] request w[ould] be sent [via] standard mail" because the request did not comply with the agency's electronic FOIA terms of service. *Id.*

In February 2022, the FBI informed Mr. Soliman by letter that it had "conducted a search of the places reasonably expected to have records [but was] unable to identify records responsive to [his] request." *Id.* at 15. Additionally, in its standard "FBI FOIPA Addendum,"[3] the agency explained that it could neither confirm nor deny the existence of records—what is known as a *Glomar* response—related to certain classes of information, including "intelligence sources, methods, or activities," "[w]atch [l]ists," "[w]itness [s]ecurity program[s]," and "[i]ncarcerated [i]ndividuals," based on FOIA Exemptions 1, 3, 7(D), 7(E), and 7(F). ECF No. 13-4, at 17, 52.

In March, Mr. Soliman, through counsel, requested a status update on his FOIA requests. ECF No. 13-4, at 26-27. The FBI responded soon after, explaining that it had mailed a response

---

[3] "FOIPA" is the FBI's way of referring to requests brought under FOIA and/or the Privacy Act, which are processed similarly. *See* ECF No. 13-4, at 17.

the month before. *Id.* at 26.  His counsel replied that the response had not been received and asked

the FBI to send another copy, which the FBI agreed to do. *Id.* at 25.  Mr. Soliman's counsel alleges

that she did not receive that copy either. *Id.* at 24.

In May, despite having not received the FBI's response, Mr. Soliman filed an appeal with

the Department of Justice's Office of Information Policy "to the extent the [FBI had] rendered an

adverse judgment or a determination of no records." *Id.* at 24.  The office confirmed receipt of his

appeal, *id.* at 32, and it affirmed the FBI's FOIA response in July, *id.* at 34-35.

Meanwhile, in June, Mr. Soliman submitted a new FOIA request to the TSC seeking:

> The entirety of any file about Mr. Soliman maintained in the
> Terrorist Screening Dataset ("TSDS") and its predecessor, the
> Terrorist Screening Database ("TSDB"), including the record
> history and any archived TSDS/TSDB records;
>
> Records of communications between the TSC and Egyptian partners
> regarding Mr. Soliman;
>
> Records of remote queries of the TSDS/TSDB regarding
> Mr. Soliman;
>
> Records regarding Mr. Soliman maintained in the Encounter
> Management Application ("EMA"), including but not limited to
> records created or received on the following dates: 06/25/2019;
> 07/03/2019;  10/04/2019;  10/18/2019;  10/22/2019;  11/18/2019;
> 12/02/2019; 12/17/2019; 02/08/2021;
>
> Records of queries by TSC to Fusion Centers regarding Mr. Soliman
> and the resulting information received; [and]
>
> Records of requests to remove Mr. Soliman from the TSDS/TSDB
> received by or maintained by TSC.

ECF No. 1-6 at 1; *see* ECF No. 1 ¶ 8; ECF No. 13-4, at 41-42.  The FBI responded in July,

informing Mr. Soliman that it had "reopened" his previous FOIA request (No. 1508332) "based

on the additional information [he had] provided," that it had conducted an additional search, but

that it was still "unable to identify records . . . responsive to [his] request."  ECF No. 13-4, at 45.

The FBI also sent another copy of its standard *Glomar* response, *id.* at 47-48, and explained the process by which Mr. Soliman could submit an administrative appeal, *id.* at 46. Mr. Soliman did not appeal the FBI's July 2022 decision. *See generally* ECF No. 1.

Mr. Soliman filed suit in March 2024. ECF No. 1. He alleges that the TSC violated FOIA by failing to timely respond to both of his FOIA requests, *id.* ¶¶ 23-32, and wrongfully withholding nonexempt, responsive records, *id.* ¶¶ 33-41. He seeks declaratory and injunctive relief, as well as attorney's fees and costs. *Id.* at 7. The parties have filed cross-motions for summary judgment, ECF Nos. 13, 16, which are ripe for resolution, ECF Nos. 13, 15 to 18, 20.

## II.    LEGAL STANDARDS

The purpose of FOIA is "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Am. C.L. Union v. U.S. Dep't of Just.*, 655 F.3d 1, 5 (D.C. Cir. 2011) (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)). Congress nonetheless included nine exemptions from disclosure that "are intended to balance the public's interest in governmental transparency against the legitimate governmental and private interests [that] could be harmed by release of certain types of information." *Tipograph v. U.S. Dep't of Just.*, 83 F. Supp. 3d 234, 238 (D.D.C. 2015) (alteration in original) (internal quotation marks omitted) (quoting *United Techs. Corp. v. U.S. Dep't of Def.*, 601 F.3d 557, 559 (D.C. Cir. 2010)). Additionally, in certain circumstances, an agency "may refuse to confirm or deny the existence of [responsive] records." *Wolf v. Cent. Intel. Agency*, 473 F.3d 370, 374 (D.C. Cir. 2007) (quoting *Gardels v. Cent. Intel. Agency*, 689 F.2d 1100, 1103 (D.C. Cir. 1982)). A response of this kind is commonly referred to as a *Glomar* response, and it "is valid 'if the fact of the existence or nonexistence of agency records falls within a FOIA exemption.'" *People for the Ethical Treatment*

*of Animals v. Nat'l Insts. of Health*, 745 F.3d 535, 540 (D.C. Cir. 2014) (quoting *Wolf*, 473 F.3d at 374).

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may be awarded to the agency if it can demonstrate that no material facts are in dispute, that it conducted an adequate search for responsive records, and that each record has either been produced or is exempt from disclosure. *Jud. Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 59 F. Supp. 3d 184, 189 (D.D.C. 2014). The agency invoking a FOIA exemption bears the burden of demonstrating that it applies. *U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989); *see Knight First Amend. Inst. v. Cent. Intel. Agency*, 11 F.4th 810, 813 (D.C. Cir. 2021) (same for providing a *Glomar* response). This burden is met when agency affidavits or declarations "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf*, 473 F.3d at 374-75 (quoting *Gardels*, 689 F.2d at 1105). "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." *Manna v.*

6

*U.S. Dep't of Just.*, 106 F. Supp. 3d 16, 18 (D.D.C. 2015) (quoting *Span v. U.S. Dep't of Just.*, 696

F. Supp. 2d 113, 119 (D.D.C. 2010)).

## III.    DISCUSSION

The disputes in this case hinge on whether the TSC is properly considered part of the FBI for the purposes of FOIA.  If the TSC is part of the FBI, then the court must consider whether Mr. Soliman exhausted his administrative remedies and, if so, whether the FBI's responses to his FOIA requests directed at the TSC were sufficient.[4]  If the TSC is not part of the FBI, then the TSC has failed to respond at all to Mr. Soliman's requests, likely entitling Mr. Soliman to relief. The court concludes that the TSC is a subcomponent of the FBI—which is itself a component of the Department of Justice—and that Mr. Soliman has not exhausted his administrative remedies; accordingly, it will enter judgment for the TSC.

### A.    The TSC Is a Component of the FBI

The TSC was created in 2003 by President George W. Bush to "consolidate the Government's approach to terrorism screening and provide for the appropriate and lawful use of Terrorist Information in screening processes."  U.S. Dep't of Just., Off. of Inspector Gen., Audit Div., Review of the Terrorist Screening Center (June 2005), at i.[5]  While several government agencies are involved with the TSC, pursuant to a Memorandum of Understanding ("MOU"), the

---

[4] Mr. Soliman does not challenge the denial of the FOIA request he submitted directly to the FBI's RIDS.  ECF No. 15, at 6.

[5] *Available at* https://perma.cc/34B3-PUTG.  Mr. Soliman includes "[e]xcerpts" of this report as Exhibit B to his cross-motion for summary judgment, ECF No. 16, at 4 n.3, *see* ECF No. 16-3, but the court will refer to the complete original for reasons that will soon become clear.

FBI was designated "as the lead agency responsible for administering the TSC." *Id.* at iii;[6] *see* ECF No. 16-2, at 2 ("The TSC is administered by the Federal Bureau of Investigation ('FBI') in coordination with [other government agencies].").  Consequently, the TSC is housed within the FBI's National Security Branch, along with other FBI subcomponents like the Counterterrorism and Counterintelligence Divisions.  U.S. Dep't of Just., Fed. Bureau of Investigation: Nat'l Security Branch, at 2.[7]

Consistent with the above understanding of the organizational structure, the FBI has maintained throughout this case that the TSC is "a subcomponent of the FBI."  ECF No. 13-3 ¶ 6; *see* ECF No. 13-1 ¶ 3 ("The [TSC] is a subcomponent of the FBI."); ECF No. 13-2, at 1 (same).  Additionally, courts routinely recognize that the TSC is part of the FBI.  *See, e.g.*, *Abdellatif v. U.S. Dep't of Homeland Sec.*, 109 F.4th 562, 564-65 (D.C. Cir. 2024) ("The [TSC is] a component of the FBI[.]"); *Ege v. U.S. Dep't of Homeland Sec.*, 784 F.3d 791, 793 (D.C. Cir. 2015) (explaining that the TSC is "administered" by the FBI).

Mr. Soliman resists this straightforward conclusion, repeatedly asserting that "[t]he TSC is a separate agency with separate obligations to meet the requirements set forth in FOIA, independent from the FBI[]."  ECF No. 15, at 1; *see, e.g., id.* at 4 ("TSC qualifies as an agency subject to obligations under FOIA separate and apart from the FBI."); ECF No. 16, at 1 ("Defendant TSC qualifies as an agency under the FOIA's definition[.]").  But he cites no direct

---

[6] Curiously, Mr. Soliman omits this critical page from his "[e]xcerpts" of Exhibit B.  ECF No. 16, at 7, *see generally* ECF No. 16-3 (omitting only page iii from the first eleven pages of the exhibit).  The court hopes that this was an oversight rather than an intentional omission, but it reminds Mr. Soliman's counsel, Christina A. Jump, that when she became a member of the bar of this court, she took an oath to "conduct [her]self with dignity and according to both the law and the recognized standards of ethics of our profession."  Local Civ. R. 83.8(e).  The court retains discretion to refer counsel to the court's Disciplinary Panel should it conclude that this omission was intentional rather than accidental.  *See id.* R. 83.16(d)(2).

[7] *Available at* https://perma.cc/25XW-FGES.

support for this contention.  Instead, he argues that because the TSC has independent duties and employees, it must be an independent agency required to process its own FOIA requests.  ECF No. 16, at 4-5.  Unfortunately for Mr. Soliman, that is not how FOIA works.

FOIA requires that each federal agency maintain a system through which the public may seek information from the agency.  5 U.S.C. § 552(a)(1).  Consistent with FOIA, the Department of Justice has issued regulations explaining that it maintains a "decentralized system for responding to FOIA requests, with each component designating a FOIA office to process records from that component."  28 C.F.R. § 16.3(a)(1).  For purposes of the regulations, a "component" is "each separate bureau, office, division, commission, service, center, or administration *that is designated by the Department* as a primary organizational entity."  *Id.* § 16.1(b) (emphasis added).  The Department of Justice has designated the FBI—writ large—as a component, and its RIDS, Records Management Division, as the office responsible for processing all FOIA requests directed at the FBI and its subcomponents.  *Id.* part 16, App. I.  While the Department of Justice could have designated particular branches or subcomponents of the FBI as "components" for purposes of FOIA, as it did with, for example, the Department of Justice's Office of the Solicitor General, *id.*, it did not.

The consequence of the Department of Justice's decision to structure its FOIA process in this way is that any request directed to a subcomponent of the FBI—like the TSC—is properly routed to and processed by the FBI's RIDS.  *See, e.g.*, *Shapiro v. U.S. Dep't of Just.*, 37 F. Supp. 3d 7, 14-15 (D.D.C. 2014) (RIDS's processing of a request for TSC records); *Shapiro v. Cent. Intel. Agency*, 247 F. Supp. 3d 53, 60 (D.D.C. 2017) (same).

### B.       Mr. Soliman Failed to Exhaust His Administrative Remedies

Having concluded that the TSC is part of the FBI, the court looks at the FBI's handling of Mr. Soliman's October 2021 and June 2022 FOIA requests concerning the TSC.  While the parties did not brief administrative exhaustion, the court concludes that Mr. Soliman has failed to exhaust his administrative remedies.

Mr. Soliman submitted two FOIA requests in October 2021: one to the TSC and one to RIDS.  ECF No. 15, at 1.  After the TSC received Mr. Soliman's October 2021 FOIA request, it forwarded the request to RIDS for processing.  *See* ECF No. 13-3 ¶ 6 ("As the TSC is a subcomponent of the FBI, [Mr. Soliman's October 2021 FOIA] request submitted to that office was forwarded to RIDS[.]").  RIDS consolidated the two requests into one, *id.* ¶ 8, and it issued a response in February 2022, ECF No. 13-4, at 15-16.  Mr. Soliman filed an administrative appeal of the FBI's decision, ECF No. 13-4, at 24, and the Department of Justice's Office of Information Policy affirmed the decision on July 18, 2022, *id.* at 34-35.  That was sufficient for Mr. Soliman to exhaust his administrative remedies concerning the combined October 2021 request.  But, notably, Mr. Soliman did not file suit based on that request.  *See generally* ECF No. 1; *see also* ECF No. 15, at 6 (admitting that Mr. Soliman "took no further action" after receiving the Office of Information Policy's decision on his administrative appeal).[8]

Mr. Soliman submitted a second FOIA request to the TSC in June 2022.  ECF No. 13-4, at 41-42.  This request was also forwarded to RIDS for processing.  ECF No. 13-3, at 6 n.3.  On July 26, 2022, the FBI responded that it had reopened Mr. Soliman's original request and

---

[8] Mr. Soliman may still be able to file suit based on the FBI's response to his combined October 2021 FOIA request because he has exhausted his administrative remedies, but such a claim is outside the ambit of this suit, which is based solely on the erroneous premise that the TSC failed to respond to his FOIA requests *at all*.

conducted a new search, but it informed Mr. Soliman that it still had nothing to provide.  ECF No. 13-4, at 45-48.  Mr. Soliman had ninety days from July 26, 2022 to file an administrative appeal with the Department of Justice's Office of Information Policy, 28 C.F.R. § 16.8(a), but he did not.  Instead, Mr. Soliman filed suit in March 2024.

The court acknowledges that the FBI did not raise administrative exhaustion in its motion for summary judgment, *see generally* ECF No. 13, but it did raise the defense in its answer, ECF No. 7, at 8.  In view of the fact that administrative exhaustion poses jurisprudential questions about the availability of judicial review of Mr. Soliman's FOIA claims, the court considers the issue sufficiently preserved for consideration.  *Mikhashov v. Dep't of Def.*, No. 22-CV-3485, 2024 WL 4332601, at *11 (D.D.C. Sep. 26, 2024) (considering exhaustion where it had been raised in the defendants' answer but not their motion for summary judgment); *see Dettmann v. U.S. Dep't of Just.*, 802 F.2d 1472, 1476 n.8 (D.C. Cir. 1986) ("[N]on-exhaustion may be raised *sua sponte* by a reviewing court . . . even when it has no bearing on jurisdiction.").

"FOIA requires exhaustion of administrative remedies by a plaintiff dissatisfied with a federal agency's response to a specific records request."  *Mikhashov*, 2024 WL 4332601, at *9.  As relevant here, when "a requester [is] dissatisfied with the agency's determination" on his FOIA request, he "'is required to administratively appeal that "determination" before bringing suit.'"  *Id.* (quoting *Citizens for Resp. & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 182 (D.C. Cir. 2013)).  Importantly, "foregoing an administrative appeal will preclude the requester from ever bringing suit on that request because the individual will not have exhausted his administrative remedies."  *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 65 (D.C. Cir. 1990).

"Although exhaustion of a FOIA request is not jurisdictional," it is a "jurisprudential doctrine [that] precludes judicial review if the purposes of exhaustion and the particular

administrative scheme support such a bar." *Elec. Priv. Info. Ctr. v. Internal Revenue Serv.*, 910 F.3d 1232, 1238 (D.C. Cir. 2018) (internal quotation marks omitted) (quoting *Wilbur v. Cent. Intel. Agency*, 355 F.3d 675, 677 (D.C. Cir. 2004) (per curiam)).  The court concludes that the purposes of exhaustion support a bar here.  Mr. Soliman was on notice that the FBI's RIDS had processed his May 2022 FOIA request directed at the TSC because it expressly told him so.  ECF No. 13-4, at 45-48 (providing a response to Mr. Soliman's May 2022 FOIA request under the signature of Michael G. Seidel, Section Chief, RIDS, Information Management Division).  If Mr. Soliman believed that this request should have been handled by the TSC directly, he could have and should have raised the issue in an administrative appeal.  After all, such an appeal goes to the Department of Justice, and it is the Department of Justice that designates what is a "component" for purposes of handling FOIA requests.  28 C.F.R. § 16.1(b).  Instead, Mr. Soliman brought suit contending that he had never received a response to his May 2022 FOIA request—a statement he maintains throughout summary judgment.  ECF No. 15-1 ¶ 9 ("Plaintiff Soliman denies he received any response from Defendant TSC to his second [FOIA] request.").  Mr. Soliman's failure to put the agency on notice of his objections denied "the agency an opportunity to respond" and precludes judicial review.  *Magassa v. Transp. Sec. Admin.*, No. 22-CV-5155, 2023 WL 8826564, at *3 (D.C. Cir. Dec. 21, 2023).  Accordingly, the court will grant summary judgment to the TSC.  *See Lopez v. Nat'l Archives & Records Admin.*, 301 F. Supp. 3d 78, 89 (D.D.C. 2018) (holding that the defendant was entitled to summary judgment because the plaintiff had failed to appeal the agency's determination before bringing suit).

## IV.    CONCLUSION

For the foregoing reasons, the court will grant the TSC's Motion for Summary Judgment, ECF No. 13, and deny Mr. Soliman's Cross-Motion for Summary Judgment, ECF No. 16.   A contemporaneous order will issue.

_____
LOREN L. ALIKHAN
United States District Judge

Date:   March 31, 2025

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AYMAN FAREH SOLIMAN,

*Plaintiff*,

v.                                                      Civil Action No. 24 - 634 (LLA)

THREAT SCREENING CENTER,

*Defendant*.

## ORDER

For the reasons stated in the court's Memorandum Opinion, ECF No. 21, it is hereby **ORDERED** that Defendant's Motion for Summary Judgment, ECF No. 13, is **GRANTED** and Plaintiff's Cross-Motion for Summary Judgment, ECF No. 16, is **DENIED**.

This Order constitutes a final judgment of the court within the meaning of Rule 58(a) of the Federal Rules of Civil Procedure. The Clerk of Court is directed to terminate the case.

**SO ORDERED.**

_____
LOREN L. ALIKHAN
United States District Judge

Date:   March 31, 2025